## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| **DRAKE RYAN WILSON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Criminal Case No. 20-cr-20077** |
| | ) | **Civil Case No. 2:24-cv-02204** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## <u>ORDER AND OPINION</u>

This matter is before the Court on Petitioner Drake Ryan Wilson's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. (D. 185).[1] For the reasons set forth below, Petitioner's § 2255 Petition is DENIED.

## I.    BACKGROUND

In November 2014 Wilson pled guilty to possession of methamphetamine in Coles County Case No. 13-CF-403 and was sentenced to four years' imprisonment in the Illinois Department of Corrections ("IDOC"). (D. 140, ¶ 66). He was released on parole on April 15, 2016. *Id.* While on parole, he was charged with possession of methamphetamine in Coles County Case No. 16-CF-271. *Id.* at ¶ 68. He plead guilty in December 2016 and was sentenced to 30 months' probation and fined. *Id.*  In January 2017 he was remitted to IDOC custody as a violator of his parole in Coles County Case No. 13-CF-403. Wilson's sentence in  Case No. 13-CF-403 was discharged in May 2017. *Id.* at ¶ 66. In July 2017, Wilson was charged in Coles County Case No. 17-CF-276 with delivery of methamphetamine. *Id.* at ¶ 69. He entered a guilty plea on April 17, 2018, and was sentenced to six years' imprisonment. *Id.* Wilson's probation was terminated as unsatisfied in Case

---

[1] All citations are to Petitioner's criminal docket 20-cr-20077.

No. 16-CF-271 in lieu of his plea in Case No. 17-CF-276. Wilson was serving his sentence in Case No. 17-CF-276 when he committed the offense in this case. *Id.*

On November 4, 2020, a two-count Indictment was filed in the U.S. District Court of the Central District of Illinois, Urbana Division. Count I charged that beginning no later than March 2020 and continuing to about June 25, 2020, Wilson, his wife and two others ("co-defendants") committed the offense of Conspiracy to Distribute Methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A). (D. 1). This conduct occurred while Wilson was in the custody of an IDOC work-release facility. (D. 140, p. 4). Wilson used the facility's telephone, which recorded his calls, to give instruction and guidance to people, including his wife, concerning the sale of methamphetamine. *Id.* at pp. 4–8.

Wilson pleaded guilty in 2023 to Count I of the Indictment. Prior to sentencing, probation filed a revised presentence investigation report ("PSR"). (D. 140). The PSR's "Sentencing Options" stated that under the "Statutory Provisions," the minimum term of imprisonment was ten years, and the maximum term was life under 21 U.S.C. §§ 846 and 841(a)(1). *Id.* at ¶ 110. The PSR's "Offense Level Computation" included the following Chapter 4 Enhancement:

> Pursuant to USSG §4B1.1, a defendant is a career offender if (1) the defendant is at least 18 years old at the time the defendant committed the instant offense of conviction, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. Defendant Wilson has two prior convictions that are triggering offenses for the career offender provision: Case No. 2004-CF-28 (Delivery of a Controlled Substance) and Case No. 2017-CF-276 (Delivery of Methamphetamine), both of which occurred in Coles County, Illinois, Circuit Court. Since the defendant was at least 18 years of age when he committed the instant offense, a felony controlled substance offense, he is considered a career offender pursuant to the sentencing guidelines. With a statutory maximum term of life imprisonment, the offense level of 37 shall apply. USSG §4B1.1(a) and §4B1.1(b)(1).

*Id.* at ¶ 52. That offense level was reduced three points for acceptance of responsibility. The

2

Guideline imprisonment range was 262 to 327 months' imprisonment, based on a total offense level of 34 and a criminal history category VI. *Id.* at ¶ 111.

### A. Sentencing Hearing

Wilson's sentencing hearing was held on September 19, 2023. The Court opened the hearing noting Wilson had raised three objections to the PSR. Wilson's attorney informed the Court that it was withdrawing two of the three objections, including their objection to Wilson's prior conviction being a predicate offense to the career offender enhancement. (D. 196-2, pp. 3–4). Wilson's attorney explained: "regarding a prior conviction in 2004 out of Coles County -- the certified copy of the conviction and docket was provided by the government, indicating it was a delivery. There was some confusion initially regarding whether it was." *Id.* at p. 4. Wilson confirmed that after consulting with his attorney it was his decision to withdraw the objections. *Id.*

Wilson's final objection was to relevant conduct based on the reliability of information obtained from Heather Nicolas and used for a two-point enhancement (from 30 to 32 points) in the PSR. *Id.* At the sentencing hearing, Wilson's counsel informed the Court that the Government now only intended to call Wilson's wife and co-defendant, Amanda Wilson, to testify instead of Ms. Nicolas, which his attorney objected to. *Id.* Because it was the Government's burden of proof and the challenged statements by Ms. Nicolas in the PSR specifically identified Ms. Wilson, the Court allowed the Government to proceed with calling Ms. Wilson, after Wilson's attorney confirmed that he would not be asking for a continuance. *Id.* at pp. 6–7.

Ms. Wilson testified that she and her husband dealt methamphetamines from 2014 until she was arrested in June 2020. *Id.* at pp. 9–11. She then testified to the facts and circumstances surrounding the methamphetamine conspiracy she engaged in with him in this case. *Id.* at pp. 12-19. Specifically, she testified that Wilson would call her either from the IDOC Peoria Work

Release Center where he was incarcerated or from a cell phone and provide her with instructions for purchasing methamphetamines from a dealer in Peoria. *Id.* at pp. 12–13. Ms. Wilson would then travel to Peoria to purchase the drugs, stating: "twice I picked up a half a pound [of methamphetamines]…[a]nd then around four or five times I picked up a pound [of methamphetamines]... [a]nd then twice that I can recall that I picked up a pound and a half [of methamphetamine]." *Id.* at p. 16. Ms. Wilson testified that friends, such as Ms. Nicolas, and occasionally her husband accompanied her. *Id.* When asked about the level of detail Wilson provided her with, Ms. Wilson testified that her husband provided her with "full detail" regarding what she was supposed to do both to purchase and then sell the drugs. *Id.* at p. 18. Wilson's attorney did not have any questions for Ms. Wilson on cross-examination and did not raise any objections to her testimony. *Id.*  at pp. 22–23. Ultimately, the Court deemed Ms. Wilson to be a credible witness and that her testimony supported the finding of the relevant conduct asserted. *See id.* at pp. 28–29.

The Government then called Special Agent Nilson with the FBI to testify in aggravation. *Id.* at p. 30. Agent Nilson testified that he is responsible for TOC-West drug investigations and worked a jointly with a local task force, East Central Illinois Task Force ("ECITF"), on the investigation in this case. *Id.* at p. 32.  The main investigative technique used by ECTIF and TOC-West to investigate drug crimes are controlled purchases. *Id.* at p. 33. Controlled purchases utilized a confidential human source ("CHS"), wearing a recording device, to purchase drugs from the individuals they are investigating. *Id.* at pp. 33–34. Nilson testified that following Wilson's arrest in this case, he was working jointly with ECITF on a different investigation in Mattoon-Charleston, Illinois. *Id.* at p. 34. That investigation involved controlled purchases of methamphetamines by a CHS on August 31, 2021,  September 22, 2021, and October 26, 2021. Nilson was familiar with

4

Wilson, and recognized his name when it came up during the September 2021 controlled purchase. At that time, Wilson was in pre-trial detention at the Ford County Jail. After hearing Wilson's name, he obtained his recorded phone calls which showed Wilson was instructing individuals involved in the controlled purchases "on who to sell to, how much to sell, for how much money, and even where to go, what locations to meet at." *Id.* at 42. In other words, Wilson can be heard "aiding and leading them to distribute methamphetamine for him" while in the custody of the Central District of Illinois in this case. *Id.*

At the conclusion of the sentencing hearing the Court heard argument regarding the sentence to be imposed. Again, Wilson's attorney presented argument asking the Court to deviate from the advisory Guideline range in the PSR, in part because his 2004 conviction qualified for the career offender enhancement involving less than .2 grams of cocaine and was only 17 months away from no longer being considered against him. (D. 196-2, p. 58). Taking everything into consideration, the Court sentenced Wilson below the Guideline range to 240 months' imprisonment to be followed by five years of supervised release. (D. 147); *see also* U.S.S.G. § 4B1.1; 3E1.1; ch. 5, pt. A. When imposing this sentence, the Court made a point of stating that it understood what Wilson's attorney's argument was regarding the 2004 conviction, and taking everything into account found that the sentence imposed was sufficient but not greater than necessary to address all the sentencing factors under 18 U.S.C. § 3553(a). (D. 196-2, pp. 69–70). No direct appeal was filed.

In January 2024, Wilson filed a motion to reduce sentence under 18 U.S.C. § 3852(c)(2) and a retroactive amendment to the Sentencing Guidelines (Amendment 821). (D. 171). That motion was denied, in part because Wilson was a career offender and Amendment 821 did not lower his sentencing guideline range. (D. 174). The Seventh Circuit affirmed. *United States v.*

*Wilson*, Case No. 24-1134 (7th Cir. Oct. 2, 2024).

While that appeal was pending, Wilson filed the present Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 ("§ 2255 Petition"). (D. 185).[2] The § 2255 Petition seeks relief on the following four grounds: (1) that he received ineffective assistance of counsel for not being helpful, failing to raise objections regarding Wilson's relevant conduct, and not challenging the validity of Wilson's career offender designation; (2) that his Coles County Case No. 2004-CF-28 conviction should have not applied toward the career offender enhancement under *United States v. Ruth*, 966 F.3d 642 (7th Cir. 2020) and *United States v. Turner*, 55 F.4th 1135 (2022); (3) probation's reliance on Ms. Nicolas' statements in the PSR for relevant conduct; and (4) aggravation evidence used by the Government at sentencing. (D. 185). The Government responded requesting that the Court deny the § 2255 Petition, (D. 194), and filed an affidavit from Wilson's trial attorney, (D. 196-3). Wilson did not reply to the Government's response. This Order follows.

## II.    LEGAL STANDARDS

Section 2255 provides that a prisoner "may move the court which imposed the sentence to vacate, set aside, or correct the sentence" on the basis that his conviction or sentence was imposed "in violation of the Constitution or laws of the United States . . ." 28 U.S.C. § 2255(a). Such motions seek "an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Unlike a direct appeal, where a defendant can raise nearly any error, relief in § 2255 proceedings is permitted only for "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Blake v. United States*, 73 F.3d 870, 878–79 (7th Cir. 2013);

---

[2] The Court stayed proceedings on the § 2255 Petition until the appeal was resolved. *See Text Order* on 09/09/2024.

*Harris v. U.S.*, 366 F.3d 593, 594 (7th Cir. 2004). A district court may dismiss a section 2255

motion "if the allegations in the motion are unreasonably vague, conclusory, or incredible, or if

the factual matters raised by the motion may be resolved on the record before the district court."

*Oliver v. United States,* 961 F.2d 1339, 1343 (7th Cir. 1992).

## III.    DISCUSSION

The Government's Response starts by arguing that Wilson's claims challenging his career

offender status are unreviewable because that issue was previously resolved adversely on direct

appeal. (D. 194, p. 4). The only appeal filed in this case was of this Court's order denying Wilsons'

post-conviction motion to reduce his sentence under § 3582(c)(2) and Amendment 821. (D. 174).

The Seventh Circuit affirmed, stating:

> On appeal, Wilson argues primarily that the district court did not sentence him as a
> career offender, given its decision to vary below the guidelines range. (He also
> disputes the validity of one of his predicate offenses.) He suggests that the court
> would have varied downward even further if it had been willing to apply
> Amendment 821.
>
> But the sentencing transcript shows that the district court sentenced Wilson as a
> career offender. That designation mandated a criminal history category of VI.
> U.S.S.G. § 4B1.1(b). Because Wilson's criminal history category was triggered by
> his career-offender status, any reduction in his criminal history score under
> Amendment 821 would not lower his criminal history category or guidelines range.
> And because Wilson's guidelines range has not been lowered, he is ineligible for
> relief under § 3582(c)(2).
>
> To the extent Wilson argues, alternatively, that the district court *did* sentence him
> as a career offender (but wrongly so), a § 3582(c)(2) motion is not the proper
> vehicle to challenge a career-offender designation. *See Dillon v. United States*, 560
> U.S. 817, 831 (2010); *United States v. Jackson*, 573 F.3d 398, 400 (7th Cir. 2009).

*Wilson*, Case No. 24-1134, at **2–3 (7th Cir. Oct. 2, 2024).

In *Dillon v. United States*, 560 U.S. 817, 831 (2010), the Supreme Court explained that §

3582(c)(2) "permits a sentence reduction within the narrow bounds established by the

Commission" and when the aspects of the sentence that a defendant seeks to correct are not

affected by the Commission's amendment, "they are outside the scope of the proceeding authorized by § 3582(c)(2)…." Here, Amendment 821 did not amend the career offender Guidelines, therefore this aspect of Wilson's sentence fell outside the scope of proceeding under § 3582(c)(2), and was not considered by the Seventh Circuit on appeal. *See also U.S. v. Jackson*, 573 F.3d 398, 400 (7th Cir. 2009). Section 2255, on the other hand, "is available to correct 'an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'" *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (quoting *Blake v. United States*, 723 F.3d 870, 878–79 (7th Cir. 2013)).

The Government also argues that Grounds 2-4 are procedurally barred, and that Wilson's ineffective assistance of counsel claim in Ground 1 should be denied based on merit.

### A. Grounds 2-4 are Procedurally Defaulted

A claim cannot be raised for the first time in a § 2255 petition if it could have been raised before the trial court or on direct appeal. *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009). When a movant fails to properly raise his constitutional claims on direct review, a petitioner's procedural default may be excused only if he can show either "(1) actual innocence or (2) cause and prejudice." *Delatorre v. United States*, 847 F.3d 837, 843 (7th Cir. 2017) (citing *Bousley v. U.S.*, 523 U.S. 614, 622 (1998)). Procedural default, however, does not apply to claims of ineffective assistance of counsel not raised on direct appeal, even if they could have been raised on direct appeal. *See Massaro v. U.S.*, 538 U.S. 500, 504 (2003) ("[A]n ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal.").

The Government claims Grounds 2-4 are procedurally defaulted because in addition to Wilson withdrawing his objection to the career offender enhancement at sentencing (Ground 2),

nothing precluded Wilson from pursuing these claims on direct appeal. Because Wilson is not claiming actual innocence, the Court must consider whether there is "cause and prejudice" to excuse his procedurally defaulted claims. A petitioner shows "cause and prejudice" by demonstrating both "(1) good cause for his failure to raise the defaulted claim[s] before collateral review and (2) actual prejudice stemming from the violations alleged in the defaulted claims." *Delatorre*, 847 F.3d at 843 (citing *Theodorou v. United States*, 877 F.2d 1336, 1340 (7th Cir. 1989)). In *Delatorre*, a procedural default will not be excused if the defendant, aware of the facts of the alleged constitutional violation and fails to raise the issue on appeal. *See* 847 F.3d at 843–44.

Here, nothing in the record shows that Wilson was unaware of the facts giving rise to his claims in Grounds 2-4. Wilson also declined to file a reply presenting any arguments that good cause existed for his failure to raise these claims before collateral review. The Court's Rule 4 Order warned Wilson that if he did not reply to the Government's response, "the Court will take the factual allegations in the response as true except to the extent that the Court finds from the evidence that they are not true." (*Text Order* on 10/30/2024). Because Wilson has failed to demonstrate good cause for not pursuing Grounds 2-4 either before this Court or on direct appeal, the Court finds that they are not excused from procedural default.

Furthermore, while Wilson's claims in Ground 2 may overlap with his ineffective assistance of counsel claim in Ground 1, which will be discussed below, Grounds 3 and 4 would fail even if they were not procedurally defaulted. Ground 3 reargues relevant conduct and the reliability of Ms. Nicolas' statements in the PSR. As stated above, the Court found Ms. Wilson's uncontested testimony was reliable and sufficient to establish quantity. Additionally, exact measurements are not required for a district judge to estimate aggregate drug quantities. The

Seventh Circuit's opinion in *United States v. Austin*, 806 F.3d 425 (7th Cir. 2015), provides guidance that states:

> A district court may rely upon ambiguous testimony to estimate drug quantity. *See, e.g.*, *United States v. Cross*, 430 F.3d 406, 410 (7th Cir. 2005). A district court may even consider testimony that is "totally uncorroborated and comes from an admitted liar, convicted felon, or large scale drug-dealing, paid government informant," *United States v. Clark*, 538 F.3d at 813, quoting *United States v. White*, 360 F.3d 718, 720 (7th Cir. 2004), as long as the court evaluates the evidence carefully.

In line with the Seventh Circuit's instruction, this Court carefully evaluated the evidence and appropriately estimated the aggregate drug quantity attributable to Wilson. For this same reason, Wilson's relevant conduct argument brought under Ground 1 also fails. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984) (to establish ineffective of counsel there must be both deficient performance and prejudice).

Ground 4, relating to aggravation, is also insufficient. Wilson argues that the Government's aggravation evidence is tainted because a CHS involved in the controlled buys "was out on bond, working for…the government with a cooperation agreement," was later taken "back into custody because of his actions," and was not someone that the Government could use as a witness on any of his controlled buys. (D. 185-1). To be entitled to relief under § 2255, "the petition must be accompanied by a detailed and specific affidavit which shows that the Petitioner had actual proof of the allegations going beyond mere unsupported assertions." *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006). A district court may dismiss a section 2255 motion "if the allegations in the motion are unreasonably vague, conclusory, or incredible, or if the factual matters raised by the motion may be resolved on the record before the district court." *Oliver v. United States,* 961 F.2d 1339, 1343 (7th Cir. 1992).

Here, Wilson has failed to allege sufficient facts showing he is entitled to relief based on the facts alleged in Ground 4. First, there is no evidence suggesting whether the CHS was the same

individual in all three controlled purchases. Second, Wilson presents no evidence regarding the CHS's alleged criminal conduct and when it occurred. Third, the CHS was not called to testify as a witness at sentencing. Rather, Agent Nilson testified that before each of the three controlled purchases an investigator met with the CHS, searched the CHS prior to and after the controlled purchased, provided the CHS with money and specific instructions for the buy, and equipped them with a recording device which was recovered immediately after the buy. It was statements recovered from the recording device which led investigators to recover and monitor Wilson's telephone calls at Ford County Jail on or around the dates of the controlled purchases. These recordings of Wilson, showing that he was continuing to facilitate the distribution of methamphetamines by providing detailed instructions to the individuals selling the methamphetamines to the CHS, were introduced into evidence. Wilson makes no objections to those recordings. Therefore, even if Ground 4 was not procedurally defaulted it would be dismissed for lack of merit.

### B.  Ground 1: Ineffective Assistance of Counsel Claims

The Sixth Amendment guarantees a criminal defendant "the right to effective assistance of counsel." *See Missouri v. Frye*, 566 U.S. 134, 138 (2012) (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). To prevail on his ineffective assistance of counsel claim, Petitioner must show: (1) that counsel's representation was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. Prejudice is shown when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694. To establish deficient performance, "the petitioner must show 'that counsel's representation fell below an objective standard of reasonableness.'" *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011) (quoting *Strickland*, 466 U.S. at 688)). Because

the *Strickland* test requires both deficient performance and prejudice, an ineffective assistance of counsel claim will fail if either prong of the test is not met. *Dunn v. Jess*, 981 F.3d 582, 591 (7th Cir. 2020); *United States v. Taylor*, 569 F.3d 742, 748 (7th Cir. 2009).

There is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Minnick v. Winkleski*, 14 F.4th 460, 468 (7th Cir. 2021). "Judicial scrutiny of counsel's performance must be highly deferential, indulging a strong presumption of effectiveness to combat the distorting effects of hindsight." *Atkins v. Zenk*, 667 F.3d 939, 944–45 (7th Cir. 2012) (internal citation and quotations omitted). Therefore, our review of counsel's conduct is "highly deferential and reflects a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Best*, 426 F.3d 937, 945 (7th Cir. 2005) (internal quotations omitted).

First, the Court finds that Wilson's general allegations that his attorney was not helpful, failed to communicate with him, and did not raise objections whenever Wilson did not feel something was right are underdeveloped and fail to state how Wilson was prejudiced as a result. "[P]erfunctory and underdeveloped arguments, and arguments unsupported by pertinent authority, are waived." *United States v. Holmes*, 326 F.3d 872, 877 (7th Cir. 2003); *see also Kafo*, 467 F.3d at 1067. The Seventh Circuit has also "consistently held that such conclusory allegations do not satisfy *Strickland's* prejudice component." *U.S. v. Asubonteng*, 895 F.2d 424, 429 (7th Cir. 1990).

The Court has also addressed above why Wilson's relevant conduct argument lacks merits. Contrary to Wilson's argument, his attorney did challenge Ms. Nicolas' statements in the PSR at the sentencing hearing, and Wilson does not identify how his attorney requesting a continuance would have been beneficial or otherwise changed the outcome. The burden of proof is on Wilson to provide, "*some* threshold showing, however minimal, of an evidentiary basis" for the Court to

12

evaluate his allegations and determine whether he is entitled to relief. *Kafo*, 467 F.3d at 1069 (7th

Cir. 2006). Furthermore, the Government called Ms. Wilson to testify instead to her own conduct,

which is what Ms. Nicolas' statements in the PSR were referring to and there have been no

challenges raised to Ms. Wilson's testimony.

This leaves Wilson claim that his counsel was ineffective because he failed to challenge

the career offender enhancement based on his conviction in Coles County Case No. 2004-CF-28.

Ground 1 states that Wilson's attorney "didn't want to argue my career offender designation when

I begged him to – I believe one of my predicate offenses wasn't valid – due to the time frame, type

of conviction, and length of conviction over 16 years…" (D. 185, p. 4). In Wilson's supporting

memorandum he states that after pleading guilty he told his attorney his concerns to "the career

offender enhancement" and that they talked about "one of [his] predicate offense[s]." (D. 185-1,

p. 2). Wilson then states that at sentencing his attorney "objected to the career offender

enhancement but did not take the course he said he was [going] to take," and "didn't follow through

with the arguments he said he was [going] to raise at sentencing." *Id.* He then states that he told

his attorney he wanted to appeal, but his attorney urged against it because he received a sentence

under the guideline range. *Id.* Wilson admits that he did not appeal his sentence because he was

afraid of receiving a longer sentence if resentenced. (D. 185, p. 1). Wilson now asks the Court to

vacate his sentence and resentence him without the career offender enhancement.

In response, the Government filed a Declaration from Wilson's attorney which states that

he filed a sentencing commentary asking the Court not to sentence Wilson as a career offender and

as a category V instead of category VI. (D. 196-3). He also argued at sentencing that the Court

should sentence him below the career offender guidelines for the reasons set forth above relating

to his 2004 conviction. Wilson's attorney also attested that Wilson never informed him that he

wanted to file an appeal, and that he would have done so had he been asked. *Id.* at ¶ 5. Finally, Wilson's attorney's Declaration states that although they could have challenged his 2004 conviction, "this conviction would trigger the qualifying sentencing enhancement under the career offender enhancement." *Id.* at ¶ 6. The Government's Response also highlighted that once Wilson's attorney reviewed the certified copy of the conviction indicating that it was for delivery of a controlled substance and not possession, he withdrew his objection to Wilson's 2004 conviction as a predicate offense under the career offender enhancement, and Wilson agreed to that withdrawal. (D. 194 , p. 13). Additionally, the Government argues that even if Wilson could establish that his attorney's performance was deficient, he was not prejudiced by it because he was sentenced under the career offender guideline range. *Id.*

The Sentencing Guidelines help district courts identify a range of presumptively reasonable sentences specific to the defendant and his crimes. *See Rita v. United States*, 551 U.S. 338, 347 (2007). "Over and over, the Guidelines presume that defendants with worse criminal records— exhibiting recidivism, lengthy sentences, and violence—are 'deserving of greater punishment.'" *Pulsifer v. United States*, 601 U.S. 718, 734 (2024) (citing USSG ch. 4, pt. A, intro. comment.; § 4A1.1; USSG ch. 5, pt. A). The Guidelines, however, are just that and a sentencing judge may depart or vary from the recommended range if it better fits the defendant and the goals Congress has instructed courts to consider under 18 U.S.C. § 3553(a).

When calculating a defendant's criminal history score, U.S.S.G. § 4A1.2(e) provides:

> Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

U.S.S.G. § 4A1.2(e)(1). Any sentence not within this time period is not counted. *Id.* § 4A1.2(e)(3).

In Coles County Case No. 2004-CF-28, Wilson entered a guilty plea to unlawful delivery of a controlled substance in violation of 720 ILCS 570/401(d) on October 21, 2005, and sentenced to three years' imprisonment on January 17, 2006. (D. 140, p. 13). In this case, Wilson plead guilty to Count I of the Indictment which states that beginning no later than March 2020 and continuing to about June 25, 2020, Wilson and his co-defendants committed the offense of Conspiracy to Distribute Methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A). (D. 1). Thus, this conviction was properly included in Wilson's criminal history score. *See* U.S.S.G. § 4A1.2(e)(1).

Wilson also argues that his attorney was ineffective because he did not challenge the "type of conviction" in Case No. 2004-CF-28.  The Seventh Circuit has explained that if this sentencing argument had been presented on direct review, the question could be straightforward: does Wilson qualify as a career offender under U.S.S.G. § 4B1.1(a). *Elion v. United States*, 76 F.4th 620, 625 (7th Cir. 2023). However, Wilson's claim is being considered under a § 2255 motion for ineffective assistance of counsel; thus, he can only show prejudice "if he should not have been sentenced as a career offender." *Id.* In order to make that determination the Court must start by analyzing the applicability of U.S.S.G. § 4B1.1(a), which states:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

The career-offender guidelines define the term "controlled substance offense" as:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

15

*Id.* § 4B1.2(b).

In Ground 1, Wilson does not provide any further argument or evidence in support of his position that that his conviction in Case No. 2004-CF-28 was not the type of presumable "controlled substance offense" referred to in §§ 4B1.1 and 4B1.2. While a district court must liberally construe a *pro se* § 2255 motion, s*ee United States v. Lomax*, 51 F.4th 222, 227 (7th Cir. 2022), it is "not the court's duty to imagine every possible argument for [a § 2255 movant], even when liberally construing his pro se filings." *Harris v. United States*, 13 F.4th 623, 629 (7th Cir. 2021).

Although Wilson challenges his career offender designation based on his 2004 conviction and the holdings in *Ruth*, 966 F.3d 642, and *Turner*, 55 F.4th 1135, arguing that *Ruth* prohibits considering a conviction under 720 ILCS 570/401(c)(2) as a "controlled substance offense" under 21 U.S.C. § 841(b)(1)(C), Wilson's 2004 conviction was not § 401(c)(2), but rather for delivery of a controlled substance under 720 ILCS 570/401(d), which *Ruth* did not address. Wilson makes no additional arguments regarding the "categorical approach" and its application to § 401(d). The burden of proof is on Wilson to provide, "*some* threshold showing, however minimal, of an evidentiary basis" for the Court to evaluate his allegations and determine whether he is entitled to relief. *Kafo*, 467 F.3d at 1069 (7th Cir. 2006). The holding in *Turner* also did not bar courts from considering § 401(d) as a controlled substance offense, stating:

> The district court also viewed Turner's 2015 conviction for the manufacture or delivery of a controlled substance under 720 ILL. COMP. STAT. 570/401(d) as a prior felony drug offense. We have not yet considered whether the conduct prohibited by § 401(d) is categorically broader than its federal counterpart. The Illinois provision makes it unlawful to manufacture or deliver "any other amount of a controlled or counterfeit substance ... classified in Schedules I or II." 720 ILL. COMP. STAT. 570/401(d). Under Illinois law, Schedule II includes the same cocaine provision we examined *Ruth.* 720 ILL. COMP. STAT. 570/206(b)(4). Because § 401(d) references the same, broader Illinois cocaine definition, the government concedes that this court's holding in *Ruth* may also apply to a § 401(d)

16

conviction.

> Regardless of the breadth of the state statute, a state conviction may still serve as a predicate felony offense if the Illinois provision is divisible. If so, then the court may apply the modified categorical approach and "consult a limited class of documents" to decide whether a particular alternative element formed the basis of Turner's conviction. *Descamps v. United States*, 570 U.S. 254, 257, 133 S.Ct. 2276, 186 L.Ed.2d 438 (2013). We previously held that a similar provision which banned the possession of "a controlled substance" was indivisible. *Najera-Rodriguez v. Barr*, 926 F.3d 343, 351 (7th Cir. 2019) (addressing 720 ILL. COMP. STAT 570/402(c)). That provision also referenced the controlled substances listed in the Illinois drug schedules. *Id*. at 347.Based on an analysis of charging and sentencing documents, we concluded that the statute did not require the identification of the controlled substance as an element of the offense. *Id.* at 356.

*Turner*, 55 F.4th at 1142–43. Because the Seventh Circuit has held § 401(d) is indivisible and the statute did not require identification of the "controlled substance: as an element of the offense, Wilson was not prejudiced by his attorney not raising a *Ruth* challenge to this conviction. Additionally, even if a *Ruth* challenge could have been raised to Wilson's 2004 conviction, Wilson was not prejudiced by his failure to do so because his conviction for possession on methamphetamine in Coles County Case No. 13-CF-403, for which he was sentenced to four years' imprisonment, is also a qualifying offense under U.S.S.G. § 4B1.1(a).

Finally, Wilson received a sentence below the career offender guideline range. As explained to Wilson at the sentencing hearing, after taking everything into account the Court found that a sentence of 240 months' imprisonment was sufficient but not greater than necessary to address all the sentencing factors under 18 U.S.C. § 3553(a). This remains the Court's position, especially considering Wilson continuing to facilitate the distribution of methamphetamines while both in state custody in Coles County Case No. 17-CF-276 and in pre-trial detention in this case.

## IV.    CERTIFICATE OF APPEALABILITY

If Wilson seeks to appeal this decision, he must first obtain a certificate of appealability which may issue only if a petitioner has made a "substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2). If a claim is resolved on procedural grounds, a certificate of appealability should issue only if reasonable jurists could disagree about the merits of the underlying constitutional claim and about whether the procedural ruling was correct. *Flores-Ramirez v. Foster*, 811 F.3d 861, 865 (7th Cir. 2016) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Several of Wilson's claims, as discussed *supra*, are procedurally defaulted and "reasonable jurists" would not disagree. As to his remaining grounds, the Court finds that Wilson has not made a substantial showing that he received ineffective assistance of counsel or that he was prejudiced by any of his other claims. Accordingly, the Court declines to issue a certificate of appealability.

## V.    CONCLUSION

Based on the foregoing, Petitioner Drake Ryan Wilson's [185] Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 is DENIED in its entirety, and no evidentiary hearing is necessary. The Court further DECLINES to issue a certificate of appealability. The Clerk is DIRECTED to prepare a judgment and close the case.

ENTERED this 14th day of March 2025.

/s/ Michael M. Mihm
Michael M. Mihm
United States District Judge